FOX LAW CORPORATION
Steven R. Fox, CBN 138808
W. Sloan Youkstetter, CBN 296681
17835 Ventura Boulevard, Suite 306
Encino, California 91316
(818) 774-3545
Fax (818) 774-3707
srfox@foxlaw.com

COHNE KINGHORN, P.C.
Jeffrey L. Trousdale (14814)
111 East Broadway, 11th Floor
Salt Lake City, UT   84111
Telephone:   (801) 363-4300
Facsimile:    (801) 363-4378
jt@ck.law

Counsel for Debtor-in-Possession

UNITED STATES BANKRUPTCY COURT
DISTRICT OF UTAH

| | |
|---|---|
| In re:<br><br>Sunplay Pools and Spas Superstore, Inc., a Utah Corporation,<br><br>Debtor(s). | Case No. 18-27417<br><br>Chapter 11<br><br>Hon. Joel T. Marker |

## PLAN OF REORGANIZATION

Dated:  April 26, 2019

The Debtor-in-Possession, Sunplay Pools and Spas Superstore, Inc., ("Sunplay" or the "Debtor") hereby proposes the following plan of reorganization under §1121 of Title 11 of the United States Code.

# ARTICLE I

## DEFINITIONS AND CONSTRUCTION OF TERMS

For purposes of this Plan, the following terms shall have the meanings specified in Article I.   A term used but not defined here shall have the meaning ascribed to that term in the Bankruptcy Code.   Wherever from the context it appears appropriate, each term stated shall include both the singular and the plural.   Pronouns shall include the masculine, feminine and neuter, regardless of how stated.   The words "herein," "hereof," "hereto," "hereunder" and other words of similar import refer to the Plan as a whole and not to any particular Section, sub-Section or clause contained in the Plan.   The rules of construction contained in §102 of the Bankruptcy Code shall apply to the terms of this Plan. The headings in the Plan are for convenience of reference only and shall not limit or otherwise affect the provisions hereof.

"Administrative Expense Claim" shall mean a Claim that is Allowed under §503(b) of the Bankruptcy Code and that is entitled to priority under §507(a)(1) of the Bankruptcy Code, including, without limitation:

(a)     fees and expenses of Professionals Allowed pursuant to an Order of the Bankruptcy Court, and

(b)     all fees and charges assessed against the Estate pursuant to 28 U.S.C. §1930.

"Allowed" shall mean, with reference to any Claim:

(a)     a Claim that has been listed by the Debtor in its Schedules and (i) is not listed as disputed, contingent or unliquidated, (ii) is not a Claim where a proof of claim has been filed, and (iii) is not a Claim as to which the Debtor has filed an objection;[1]

---

[1] Except as otherwise provided in the Plan, the Debtor reserves its right to object to Claims that it has listed in its Schedules, notwithstanding that the Schedules may not identify the Claim as disputed, contingent, or unliquidated.   The Debtor further reserves the right to amend its Schedules to delete any reference to listed Claims, to adjust the amount of any listed Claim, and/or to identify the Claim as disputed, contingent, or unliquidated.

(b)      a Claim where a timely[2] proof of claim has been filed by the Bar Date and either (i) no objection thereto, or application to estimate, equitably subordinate or otherwise limit recovery, has been made on or before any applicable deadline, or (ii) if an objection, or application to estimate, equitably subordinate or otherwise limit recovery has been interposed, the extent to which such Claim has been allowed (whether in whole or in part) by a Final Order;

(c)      a Claim arising from the recovery of property under §550 or §553 of the Bankruptcy Code and allowed in accordance with §502(h) of the Bankruptcy Code; or

(d)      any Claim expressly allowed under this Plan or pursuant to the Confirmation Order.

"Avoidance Actions" shall mean Causes of Action arising or held by the Estate under §§502, 510, 541, 544, 545, 547, 548, 549, or 550 of the Bankruptcy Code, or under related state or federal statutes and common law, including fraudulent transfer laws.

"Bankruptcy Case" shall mean the Debtor's case pending in the Bankruptcy Court under case number 18-27417.

"Bankruptcy Code" shall mean Title 11 of the United States Code, as amended from time to time, as applicable to the Bankruptcy Case.

"Bankruptcy Court" and "Court" shall mean the United States Bankruptcy Court for the District of Utah in which the Bankruptcy Case is pending and, to the extent of any reference under 28 U.S.C. §157, the unit of such District Court specified pursuant to 28 U.S.C. §151.

"Bankruptcy Rules" shall mean the Federal Rules of Bankruptcy Procedure as promulgated under 28 U.S.C. §2075, and any local rules of the Bankruptcy Court.

"Bar Date" shall mean: (i) February 12, 2019 with respect to a Claim against the Estate other than a Claim of a Governmental Unit; (ii) April 2, 2019 with respect to a Claim of a Governmental Unit against the Estate; if applicable, any special deadline for certain creditors to file proofs of claim as specified by the Bankruptcy Court; or (iv) if this Plan and/or an order of the Bankruptcy Court establishes a different bar date for a specific claim or category of claims (*e.g.*,

---

[2] A proof of claim is timely filed only if (a) it is filed on or before the applicable Bar Date, or (b) if it is filed after the applicable Bar Date, on or before the Effective Date the Bankruptcy Court has entered an order permitting the holder of the Claim to file a late-filed proof of claim.

rejection damages claims), the date established by the Plan or order of the Bankruptcy Court.

"Business Day" shall mean any day other than a Saturday, Sunday or legal holiday recognized in the State of Utah.

"Cash" shall mean lawful currency of the United States of America (including wire transfers, cashier's checks drawn on a bank insured by the Federal Deposit Insurance Corporation, certified checks and money orders).

"Causes of Action" shall mean, without limitation, any and all actions, causes of action, defenses, liabilities, obligations, rights, suits, debts, sums of money, damages, judgments, Claims or proceedings to recover money or property and demands of any nature whatsoever, whether known or unknown, in law, equity or otherwise, including, without limitation, Avoidance Actions.

"Claim" shall mean a claim against a Person or its property as defined in §101(5) of the Bankruptcy Code, including, without limitation, (i) any right to payment, whether or not such right is reduced to judgment, and whether or not such right is liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured; or (ii) any right to an equitable remedy for breach of performance, if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, or is fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured.

"Class" shall mean those classes designated in Article III of this Plan.

"Collateral" shall mean any property or interest in property of the Estate subject to a Lien to secure the payment or performance of a Claim, which Lien is not subject to avoidance under the Bankruptcy Code or otherwise invalid under the Bankruptcy Code or applicable law.

"Confirmation Date" shall mean the date on which the clerk of the Bankruptcy Court enters the Confirmation Order on the docket in the Bankruptcy Case.

"Confirmation Order" shall mean the order of the Bankruptcy Court confirming the Plan pursuant to the provisions of the Bankruptcy Code, and any supplementary orders of the Bankruptcy Court issued in furtherance of the Plan.

"Contingent or Unliquidated Claim" shall mean any Claim for which a proof of claim has been filed with the Bankruptcy Court, but which was not filed in

a sum certain, or which has not occurred and is dependent upon a future event that has not occurred or may never occur, and which has not been Allowed.

"Critical Vendor" shall mean any creditor that has also been identified by the Court as a "critical vendor" in the Debtor's Case (*See* Order on Debtor's Motion for Order Authorizing Payment of Prepetition Claims to Critical Vendor, finding "M").

"Debtor" shall mean Sunplay Pools and Spas Superstore, Inc.

"Disclosure Statement" shall mean the disclosure statement relating to the Plan, including, without limitation, all exhibits and schedules thereto, in the form approved by the Bankruptcy Court pursuant to §1125 of the Bankruptcy Code.

"Disputed Claim" shall mean:

(a)     if no proof of claim relating to a Claim has been filed, a claim that is listed in the Schedules as unliquidated, disputed or contingent; or

(b)     if a proof of claim relating to a Claim has been filed, a Claim where a timely objection or request for estimation, or request to equitably subordinate or otherwise limit recovery in accordance with the Bankruptcy Code and the Bankruptcy Rules, has been made, or which is otherwise disputed by the Debtor in accordance with applicable law, where an objection, request for estimation, action to limit recovery or dispute has not been withdrawn or determined by Final Order;

(c)     a Claim which is a Contingent or Unliquidated Claim; or

(d)     a Claim that is specifically identified as a "disputed" or Disputed Claim in this Plan.

"Disputed Claim Amount" shall mean the amount set forth in the proof of claim relating to a Disputed Claim or an amount estimated pursuant to an order of the Bankruptcy Court in respect of a Disputed Claim in accordance with §502(c) of the Bankruptcy Code.

"Distribution Account" shall have the meaning ascribed to it in Section 5.6 of this Plan.

"Distribution Record Date" shall mean the Confirmation Date.

"Effective Date" shall mean the 30th day following the entry of the confirmation on the Debtor's proposed plan.

"Equity Interest" shall mean any member interest in the Debtor, and all options, warrants and rights, contractual or otherwise, to acquire any such member interests, as such interests exist immediately prior to the Effective Date.

"Estate" shall mean the estate created in the Bankruptcy Case pursuant to §541 of the Bankruptcy Code.

"Final Order" shall mean an order or judgment that has not been reversed, stayed, modified or amended and where (i) the time to appeal or seek review or rehearing has expired and where no appeal or petition for certiorari, review or rehearing is pending, or (ii) if appeal, review, re-argument or certiorari of the order has been sought, the order has been affirmed or the request for review, re-argument or certiorari has been denied and the time to seek a further appeal, review, re-argument or certiorari has expired, and as a result of which such order shall have become final and non-appealable in accordance with applicable law; provided, however, that the possibility that a motion under Rule 59 or Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules, may be filed with respect to such order shall not cause such order not to be a Final Order.

"Financed Inventory" shall mean the defined term in the Objection to Debtor's Motion for Interim and Final Orders to Authorize Use of Cash Collateral [Docket No. 75].

"General Unsecured Claim" shall mean a Claim that is not a Secured Claim or that is not entitled to priority of payment under §507 of the Bankruptcy Code.

"Kunzler" shall mean Sean Kunzler, the Debtor's former owner.

"Lien" shall have the meaning set forth in §101(37) of the Bankruptcy Code; except that a Lien that has been avoided in accordance with §§544, 545, 546, 547, 548, 549 or 553 of the Bankruptcy Code shall not constitute a Lien.

"Olson" shall mean John Olson, the Debtor's principal.

"Olson Loan" shall mean the monies loaned by Olson of $85,000 pursuant to Court Order [Docket No. 89].

"Person" shall mean any individual, corporation, partnership, joint venture, association, joint-stock company, trust, unincorporated association or organization, Governmental Unit or political subdivision thereof.

"Petition Date" shall mean October 4, 2018.

"Plan" shall mean this Plan of Reorganization, including, without limitation, the exhibits, supplements, appendices and schedules hereto, either in their present form or as the same may be altered, amended or modified from time to time.

"Plan Rate" shall mean the interest rate determined pursuant to 28 U.S.C. §1961 as of the Petition Date.

"Pool Corp" shall mean SCP Distributors LLC and its wholly owned subsidiary PoolFx Supply, LLC.

"Priority Claims" shall mean any and all Claims (or portions thereof), if any, entitled to priority under §507(a) of the Bankruptcy Code other than Administrative Expense Claims.

"Priority Tax Claims" shall mean any Claim of a Governmental Unit entitled to priority under §507(a)(8) of the Bankruptcy Code.

"Pro Rata" shall mean a proportionate share of the total distribution made at any particular time under this Plan to the holders of Allowed Claims in a Class, such that the ratio of the consideration distributed on account of an Allowed Claim in a Class to the amount of such Allowed Claim is the same as the ratio of the amount of the consideration distributed on account of all Allowed Claims in such Class to the total of all Allowed Claims in such Class.

"Professionals" shall mean (i) those Persons employed pursuant to an order of the Bankruptcy Court in accordance with §327 or §1103 of the Bankruptcy Code and to be compensated for services pursuant to §§327, 328, 329, 330 and 331 of the Bankruptcy Code, or (ii) those Persons for which compensation and reimbursement is allowed by the Bankruptcy Court pursuant to §503(b)(4) of the Bankruptcy Code.

"Reorganized Debtor" shall mean the Debtor, as reorganized after the Effective Date pursuant to the terms of this Plan.

"Schedules" shall mean the schedules of assets and liabilities, the list of holders of interests and the statements of financial affairs filed by the Debtor under §521 of the Bankruptcy Code and Bankruptcy Rule 1007, as such schedules, lists and statements have been or may be supplemented or amended from time to time.

"Secured Claim" shall mean any Allowed Claim that is secured by a Lien on Collateral to the extent of the value of such Collateral, as determined in accordance with §506(a) of the Bankruptcy Code, or, in the event that such Claim is a claim of setoff under §553 of the Bankruptcy Code, to the extent of such setoff. The designation of any Claim or class of Claims as a "Secured Claim" is not intended to, and shall not act, as a waiver or release of the Debtor's rights to challenge or avoid the asserted security interest(s) on which the Secured Claim is based.

## ARTICLE II

## TREATMENT OF ALLOWED ADMINISTRATIVE EXPENSE CLAIMS AND ALLOWED PRIORITY TAX CLAIMS

2.1    <u>Non-Classification</u>.   As provided in §1123(a)(1) of the Bankruptcy Code, Administrative Expense Claims and Priority Tax Claims are not classified for the purposes of voting on or receiving distributions under the Plan.   All such Claims are instead treated separately in accordance with the terms in this Article II.

2.2    <u>Administrative Expense Claims</u>.

(a)    <u>General</u>.   Administrative Expense Claims are claims for costs or expenses of administering the Debtor's Bankruptcy Case, which are allowed under Code section 507(a)(1).   The Code requires that all Administrative Expense Claims be paid on the Effective Date of the Plan, unless a particular claimant agrees to a different treatment.

(b)    <u>U.S. Trustee's Fees</u>.   The United States Trustee's quarterly fees shall be paid in full without prior approval pursuant to 28 U.S.C. §1930 on or before the Effective Date.

(c)    <u>Professional Compensation and Expense Reimbursement Claims</u>.

(1) Each Professional shall file a final application for the allowance of compensation for services rendered or reimbursement of expenses incurred through and including the Effective Date within thirty (30) days after the Effective Date.   Any award granted by the Bankruptcy Court shall be paid (i) within fifteen days of the entry of the order of the Bankruptcy Court approving such award, unless a stay is obtained, or (ii) upon such other terms as may be mutually agreed upon between such holder of an Allowed Administrative Expense Claim and the Debtor.

(2)     All fees and expenses of Professionals for services rendered after the Effective Date in connection with the Bankruptcy Case and the Plan shall be paid by the Debtor upon receipt of reasonably detailed invoices therefor in such amounts and on such terms as such Professional and the Debtor may agree, without the need for further Bankruptcy Court authorization or entry of a Final Order.

The following chart lists <u>all</u> of the Debtor's known §507(a)(1) Administrative Expense claimants, the estimated amount of those claimants' Administrative Expense Claims, and their treatment under the Plan.   To the extent that Allowed Administrative Expense Claims are greater or less than the amounts listed below, the length and frequency of the proposed treatment shall remain the same, but the amounts of the proposed payments will be adjusted such that the Allowed Administrative Expense Claims are paid in full through equal monthly payments over the time allotted herein.

| <u>Name</u> | <u>Amount Owed</u> | <u>Treatment</u> |
|---|---|---|
| The Fox Law Corporation ("LOSRF") | $100,000 (estimated) | Paid over seven months.<br><br>- M1-M3 at $20,000 per month<br><br>- M4-M7 at $10,000 |
| Cohne Kinghorn, P.C. | $40,000 (estimated) | Paid over four months.<br><br>- M1-M4 at $10,000 per month |
| Office of the U. S. Trustee | | Paid in full on the Effective Date if owed. |
| Utah State Tax Commission | $1,103.05 | Paid in full on the Effective Date if owed. |
| John Olson | $0.00 | See Below |
| | Total | $141,103.05 |

Pursuant to Court approval, John Olson ("**Olson**"), the Debtor's principal, loaned monies to the Debtor postpetition in the amount of $85,000 (the "**Olson Loan**").   On October 31, 2018, the Bankruptcy Court entered its *Final Order Authorizing Debtor to Obtain Post-Petition Credit* [Docket No. 89], wherein it approved the terms of the Olson Loan, including its repayment as an Administrative Expense Claim.   Olson will waive and forgive repayment from the

Debtor of the Olson Loan as an Administrative Expense Claim, provided that (i) the Debtor's Plan is confirmed by the Bankruptcy Court, and no other plan is confirmed; (ii) the Bankruptcy Court enters a Final Order ruling that Olson's waiver of his Allowed Administrative Expense Claim constitutes an infusion of "new value" monies, such that Olson is entitled to retain his Equity Interests in the Debtor; (iii) the Bankruptcy Case is not at any time converted to a case under Chapter 7 of the Bankruptcy Code; and (iv) a chapter 11 trustee is not appointed at any time.   The value contributed from the Olson Loan is necessary for an effective reorganization, and the contribution made by Olson is substantial.

    2.3    <u>Priority Tax Claims</u>.   At the sole election of the Debtor, each holder of an Allowed Priority Tax Claim shall be paid either (i) upon such terms as may be agreed to between the Debtor and such holder of an Allowed Priority Tax Claim, (ii) in full in Cash on the later of the Effective Date or the date that such Allowed Priority Tax Claim would have been due if the Bankruptcy Case had not been commenced, or (iii) in four deferred equal annual Cash payments, commencing on the first anniversary of the Petition Date, and concluding on the fourth anniversary of the Petition Date, in an amount equal to the amount of such Allowed Priority Tax Claim, plus interest at the rate prescribed by Bankruptcy Code §511.

| <u>Description</u> | <u>Treatment</u> |
|---|---|
| **Internal Revenue Service**<br><br>-  Total Claim Amount: $2,730.36<br><br>-  Total Priority Claim Amount: $2,730.36 (per POC filed 02/6/19) | Paid in full on the Effective Date. |
| **State of Nevada Department of Taxation**<br><br>-  Total Claim Amount: $3,638.87<br><br>-  Total Priority Claim Amount: $3,638.87 (per POC filed 02/20/19) | Paid in full on the Effective Date. |
| **Utah State Tax Commission**<br><br>-  Total Claim Amount: $4,704.58<br><br>-  Total Priority Claim Amount: $4,704.58 (per POC amended on 4/24/19) | Paid in full on the Effective Date. |

| State of Nevada Department of Employment, Training & Rehabilitation<br><br>- Total Claim Amount: $58.92<br><br>- Total Priority Claim Amount: $58.92 (per POC filed 03/1/19) | Paid in full on the Effective Date. |
|---|---|

# ARTICLE III

# CLASSIFICATION OF CLAIMS

Claims, other than Administrative Expense Claims and Priority Tax Claims, shall be classified for all purposes, including voting on, confirmation of, and distribution pursuant to the Plan, as follows:

Class 1 – Class 1 shall consist of the Allowed Secured Claim of **Wells Fargo Commercial Distribution Finance, LLC**, arising from the loan identified in Proof of Claim No. 3-1 filed in the Case.

Class 2 – Class 2 shall consist of the Allowed Secured Claim of **JPMorgan Chase**, arising from the loan identified in Proof of Claim No. 23-1 filed in the Case.

Class 3 – Class 3 shall consist of the Allowed Secured Claim of **JPMorgan Chase**, arising from the loan identified in Proof of Claim No. 22-1 filed in the Case.

Class 4 – Class 4 shall consist of the Allowed Secured Claim of **American Express National Bank**, arising from the loan identified in Proof of Claim No. 6-1 filed in the Case.

Class 5 – Class 5 shall consist of the Allowed Secured Claim of **Mercedes-Benz Financial Services USA LLC**, arising from the loan identified in Proof of Claim No. 4-1 filed in the Case.

Class 6 – Class 6 shall consist of the Allowed Secured Claim of **JPMorgan Chase**, arising from the loan identified in Proof of Claim No. 27-1 filed in the Case.

Class 7 – Class 7 shall consist of the Allowed Secured Claim of **JPMorgan Chase**, arising from the loan identified in Proof of Claim No. 11-1 filed in the Case.

Class 8 – Class 8 shall consist of the Allowed Secured Claim of **Wells Fargo Bank, N.A**, arising from the loan identified in Proof of Claim No. 13-1 filed in the Case.

Class 9 – Class 9 shall consist of the Allowed Secured Claim of **Wells Fargo Dealer Services**, arising from the loan identified in line 2.10 of the Debtor's Amended Schedule B.

Class 10 – Class 10 shall consist of the Allowed Secured Claim of **Wells Fargo Bank, N.A**, arising from the loan identified in Proof of Claim No. 2-1 filed in the Case.

Class 11(a) – **General Unsecured Claims**.   Class 11(a) shall consist of all Allowed General Unsecured Claims against the Debtor (excepting the General Unsecured Claims identified and treated in Class 11(b)).

Class 11(b) – **General Unsecured Claims of Critical Vendor.**   Class 11(b) shall consist of the Allowed General Unsecured Claims of Pool Corp.

Class 12 – **Insider Unsecured Claim**.   Class 12 shall consist of the Allowed General Unsecured Claims of Kunzler.

Class 13 – **Equity Interests Holder.**   Class 13 shall consist of the Equity Interests of Olson.

ARTICLE IV

TREATMENT OF CLAIMS AND EQUITY INTERESTS

4.1 <u>Class 1 through Class 10 - Secured Creditors</u>

<u>Terms Applicable to All Classes of Secured Claims:</u> Unless stated otherwise: 1) payments to the holders of Allowed Secured Claims under the Plan will start on month 11 after the Effective Date; 2) interest is estimated at the non-default rate identified in the applicable loan document(s) upon which an Allowed Secured Claim is based; 3) the payment amounts proposed to holders of Allowed Secured Claims include the estimated interest rate stated for each Class; 4) the payments made to the holders of Allowed Secured Claims shall be in full satisfaction of those holders' Claims against the Debtor; and 5) to the extent that a holder of an Allowed Secured Claim has a properly perfected Lien (and then, only to the extent such Lien is not avoided pursuant to section 544(a) of the Bankruptcy Code or otherwise), the holder of an Allowed Secured Claim shall retain its Lien(s) on its respective Collateral until its Allowed Secured Claim is paid in full.   Payments to each Claim are conditioned on that Claim being Allowed and Secured.

### 4.1.1 <u>Class 1 - Wells Fargo Commercial Distribution Finance, LLC Secured</u> <u>Claim</u>

| <u>Class</u> | <u>Description</u> | <u>Impaired</u> | <u>Treatment</u> |
|---|---|---|---|
| 1 | Secured Claim of: Wells Fargo Commercial Distribution Finance (lender in senior position)<br><br>- Collateral description:   See **Exhibit "K"**<br><br>- Collateral value: $563,036 (based on cash, deposits, inventory, furniture and fixtures - typical value)<br><br>- Proof of Claim Amount: $70,915.71<br><br>- Portion of claim secured: $37,087.58 as of February 2019 from Wells Fargo's counsel<br><br>- Scheduled amount: $73,240.71 | Yes; Holder of an Allowed Class 1 Claim is entitled to vote to accept or reject the Plan. | Payment interval: Monthly.<br><br>- M11-M36 at $150/mo.;<br>- M37-M60 at $1,621.68/mo.<br><br>Begin date:          M11<br>End date:            M60<br>Interest rate %:     3.75%<br>Total payout:        $42,820.32<br><br>In addition to, or instead of, the payments identified above, Class 1 Claims shall be paid by the Debtor upon the sale(s) of the "Financed Inventory" as that term is defined in the *Objection to Debtor's Motion for Interim and Final Orders to Authorize the Use of Cash Collateral* [Docket No. 75].<br><br>When Plan payments to claimant are completed, claimant must promptly file a release of all Liens asserted against the Debtor and its property.   The failure to do so promptly shall constitute a violation of the proposed Plan and the Confirmation Order.<br><br>If claimant seeks to add attorneys' fees, charges, penalties, or the like, other than principal and interest to its Claim, then claimant must file a motion for Court approval of such fees and/or charges no later than 60 days following entry of the Confirmation Order. Failure to file a motion shall constitute a waiver of all such fees and or other charges. |

### 4.1.2  Class 2 – JPMorgan Chase Secured Claim

| Class | Description | Impaired | Treatment |
|---|---|---|---|
| 2 | Secured Claim of: JPMorgan Chase Bank (lender in second position)<br><br>- Collateral description:  See **Exhibit "K"**<br><br>- Collateral value: $563,036 (based on cash, deposits, inventory, furniture and fixtures - typical value)<br><br>- Proof of Claim Amount: $360,658.16<br><br>- Portion of Claim secured: $360,658.16 per POC<br><br>- Scheduled amount: $356,538.33 | Yes; Holder of an Allowed Class 2 Claim is entitled to vote to accept or reject the Plan. | Payment interval: Monthly.<br><br>- M11-M15 at $750/mo.;<br>- M16-M24 at $2,000/mo.;<br>- M25-M60 at $4,000/mo.;<br>- M61-M63 at $18,000/mo.;<br>- M64-M69 at $10,000/mo.;<br>- M70-M72 at $25,000/mo.;<br>- M73 at $89,262.21.<br><br>Begin date:        M11<br>End date:          M73<br>Interest rate %:      4.37%<br>Total payout:        $354,770<br><br>When Plan payments to claimant are completed, claimant must promptly file a release of all Liens asserted against the Debtor and its property.   The failure to do so promptly shall constitute a violation of the proposed Plan and the Confirmation Order.<br><br>If claimant seeks to add attorneys' fees, charges, penalties, or the like, other than principal and interest to its Claim, then claimant must file a motion for Court approval of such fees and/or charges no later than 60 days following entry of the Confirmation Order.   Failure to file a motion shall constitute a waiver of all such fees and or other charges. |

### 4.1.3 <u>Class 3 – JPMorgan Chase Secured Claim</u>

| <u>Class</u> | <u>Description</u> | <u>Impaired</u> | <u>Treatment</u> |
|---|---|---|---|
| 3 | Secured Claim of: JPMorgan Chase Bank (lender in third position)<br><br>- Collateral description:   See **Exhibit "K"**<br><br>- Collateral value: $563,036 (based on cash, deposits, inventory, furniture and fixtures - typical value)<br><br>- Proof of Claim Amount: $51,345.48<br><br>- Portion of claim secured: $51,345.48 per POC<br><br>- Scheduled amount: $50,764.72 | Yes; Holder of an Allowed Class 3 Claim is entitled to vote to accept or reject the Plan. | Payment interval: Monthly.<br><br>- M11-M15 at $120/mo.;<br>- M16-M24 at $600/mo.;<br>- M25-M36 at $1,200/mo.;<br>- M37-M60 at $1,632.71/mo.<br><br>Begin date:          M11<br>End date:            M60<br>Interest rate %:     4.37%<br>Total payout:        $59,585.04<br><br>When Plan payments to claimant are completed, claimant must promptly file a release of all Liens asserted against the Debtor and its property.   The failure to do so promptly shall constitute a violation of the proposed Plan and the Confirmation Order.<br><br>If claimant seeks to add attorneys' fees, charges, penalties, or the like, other than principal and interest to its Claim, then claimant must file a motion for Court approval of such fees and/or charges no later than 60 days following entry of the Confirmation Order.   Failure to file a motion shall constitute a waiver of all such fees and or other charges. |

### 4.1.4 Class 4 – American Express National Bank Secured Claim

| Class | Description | Impaired | Treatment |
|---|---|---|---|
| 4 | Secured Claim of: American Express National Bank (lender in fourth position)<br><br>- Collateral description:   See **Exhibit "K"**<br><br>- Collateral value: $563,036 (based on cash, deposits, inventory, furniture and fixtures - typical value)<br><br>- Proof of Claim Amount: $249,621.87<br><br>- Portion of Claim secured: $113,944.78 per remaining equity in Collateral<br><br>- Scheduled amount: $229,277.60 | Yes; Holder of an Allowed Class 4 Claim is entitled to vote to accept or reject the Plan. | Payment interval: Monthly.<br><br>- M11-M24 at $600/mo.;<br>- M25-M36 at $2500/mo.;<br>- M37-M60 at $3843.54/mo.<br><br>Begin date:         M11<br>End date:           M60<br>Interest rate %:    3.9%<br>Total payout:       $130,644.96<br><br>When Plan payments to claimant are completed, claimant must promptly file a release of all Liens asserted against the Debtor and its property.   The failure to do so promptly shall constitute a violation of the proposed Plan and the Confirmation Order.<br><br>If claimant seeks to add attorneys' fees, charges, penalties, or the like, other than principal and interest to its Claim, then claimant must file a motion for Court approval of such fees and/or charges no later than 60 days following entry of the Confirmation Order.   Failure to file a motion shall constitute a waiver of all such fees and or other charges. |

### 4.1.5 Class 5 – Mercedes-Benz Financial Services USA LLC Secured Claim

| Class | Description | Impaired | Treatment |
|---|---|---|---|
| 5 | Secured Claim of: Mercedes-Benz Financial Services USA LLC<br><br>- Collateral description: 2016 Freightliner Sprinter 2500: VIN 334880; 2016 Freightliner Sprinter 2500: VIN 335043<br><br>- Collateral value: $61,944 (pursuant to Kelley Blue Book trade in value as of February 7, 2019 based on mileage of 22,000 in good condition for each vehicle)<br><br>- Amended Proof of Claim Amount: $78,794<br><br>- Portion of Claim secured: $61,944 per value of Collateral<br><br>- Scheduled amount: $209,918.84 | Yes; Holder of an Allowed Class 5 Claim is entitled to vote to accept or reject the Plan. | Payment interval: Monthly.<br><br>  - M11-M60 at $1,296.31/mo.<br><br>Begin date:      M11<br>End date:       M60<br>Interest rate %:   2.15%<br>Total payout:    $64,815.50<br><br>When Plan payments to claimant are completed, claimant must promptly file a release of all Liens asserted against the Debtor and its property.   The failure to do so promptly shall constitute a violation of the proposed Plan and the Confirmation Order.<br><br>If claimant seeks to add attorneys' fees, charges, penalties, or the like, other than principal and interest to its Claim, then claimant must file a motion for Court approval of such fees and/or charges no later than 60 days following entry of the Confirmation Order.   Failure to file a motion shall constitute a waiver of all such fees and or other charges. |

### 4.1.6 Class 6 – JPMorgan Chase Secured Claim

| Class | Description | Impaired | Treatment |
|---|---|---|---|
| 6 | Secured Claim of: JPMorgan Chase Bank<br><br>- Collateral description: 2018 Subaru Legacy<br><br>- Collateral value: $16,858 (based on Kelley Blue Book trade in value as of February 7, 2019 based on mileage of 33,000 in good condition)<br><br>- Proof of Claim Amount: $24,043.80<br><br>- Portion of Claim secured: $16,858 per value of Collateral<br><br>- Scheduled amount: $24,043.80 | Yes; Holder of an Allowed Class 6 Claim is entitled to vote to accept or reject the Plan. | Payment interval: Monthly.<br><br>- M11-M60 at $337.16/mo.<br><br>Begin date:        M11<br>End date:         M60<br>Interest rate %:   0%<br>Total payout:     $16,858<br><br>When Plan payments to claimant are completed, claimant must promptly file a release of all Liens asserted against the Debtor and its property.   The failure to do so promptly shall constitute a violation of the proposed Plan and the Confirmation Order.<br><br>If claimant seeks to add attorneys' fees, charges, penalties, or the like, other than principal and interest to its Claim, then claimant must file a motion for Court approval of such fees and/or charges no later than 60 days following entry of the Confirmation Order.   Failure to file a motion shall constitute a waiver of all such fees and or other charges. |

### 4.1.7  Class 7 – JPMorgan Chase Secured Claim

| Class | Description | Impaired | Treatment |
|---|---|---|---|
| 7 | Secured Claim of: JPMorgan Chase Bank<br><br>- Collateral description: 2018 Subaru Legacy<br><br>- Collateral value: $19,432 (based on Kelley Blue Book trade in value as of February 7, 2019 based on mileage of 25,000 in good condition)<br><br>- Proof of Claim Amount: $22,955.82<br><br>- Portion of claim secured: $19,432 per value of Collateral<br><br>- Scheduled amount: $22,925.82 | Yes; Holder of an Allowed Class 7 Claim is entitled to vote to accept or reject the Plan. | Payment interval: Monthly.<br><br>- M11-M60 at $388.64/mo.<br><br>Begin date:          M11<br>End date:            M60<br>Interest rate %:     0%<br>Total payout:        $19,432<br><br>When Plan payments to claimant are completed, claimant must promptly file a release of all Liens asserted against the Debtor and its property.  The failure to do so promptly shall constitute a violation of the proposed Plan and the Confirmation Order.<br><br>If claimant seeks to add attorneys' fees, charges, penalties, or the like, other than principal and interest to its Claim, then claimant must file a motion for Court approval of such fees and/or charges no later than 60 days following entry of the Confirmation Order.  Failure to file a motion shall constitute a waiver of all such fees and or other charges. |

### 4.1.8 Class 8 – Wells Fargo Bank, N.A. Secured Claim

| Class | Description | Impaired | Treatment |
|---|---|---|---|
| 8 | Secured Claim of: Wells Fargo Bank, N.A.<br><br>- Collateral description: 2017 Dodge Ram Promaster<br><br>- Collateral value: $25,181 (based on Kelley Blue Book trade in value as of February 7, 2019 based on mileage of 13,000 in good condition)<br><br>- Proof of Claim Amount: N/A<br><br>- Portion of Claim secured: $25,181 per value of Collateral<br><br>- Scheduled amount: $32,410.68 | Yes; Holder of an Allowed Class 8 Claim is entitled to vote to accept or reject the Plan. | Payment interval: Monthly.<br><br>- M11-M60 at $564.68/mo.<br><br>Begin date:          M11<br>End date:            M60<br>Interest rate %:     5.5%<br>Total payout:        $28,234<br><br>When Plan payments to claimant are completed, claimant must promptly file a release of all Liens asserted against the Debtor and its property.   The failure to do so promptly shall constitute a violation of the proposed Plan and the Confirmation Order.<br><br>If claimant seeks to add attorneys' fees, charges, penalties, or the like, other than principal and interest to its Claim, then claimant must file a motion for Court approval of such fees and/or charges no later than 60 days following entry of the Confirmation Order.   Failure to file a motion shall constitute a waiver of all such fees and or other charges. |

### 4.1.9  Class 9 – Wells Fargo Dealer Services Secured Claim

| Class | Description | Impaired | Treatment |
|---|---|---|---|
| 9 | Secured Claim of: Wells Fargo Bank, N.A.<br><br>- Collateral description: 2017 Dodge Ram Promaster<br><br>- Collateral value: $25,181 (based on Kelley Blue Book trade in value as of February 7, 2019 based on mileage of 13,000 in good condition)<br><br>- Proof of Claim Amount: $32,973.22<br><br>- Portion of Claim secured: $25,181 per value of Collateral<br><br>- Scheduled amount: $32,410.68 | Yes; Holder of an Allowed Class 9 Claim is entitled to vote to accept or reject the Plan. | Payment interval: Monthly.<br><br>- M11-M60 at $564.68/mo.<br><br>Begin date:        M11<br>End date:        M60<br>Interest rate %:        5.5%<br>Total payout:        $28,234<br><br>When Plan payments to claimant are completed, claimant must promptly file a release of all Liens asserted against the Debtor and its property.   The failure to do so promptly shall constitute a violation of the proposed Plan and the Confirmation Order.<br><br>If claimant seeks to add attorneys' fees, charges, penalties, or the like, other than principal and interest to its Claim, then claimant must file a motion for Court approval of such fees and/or charges no later than 60 days following entry of the Confirmation Order.   Failure to file a motion shall constitute a waiver of all such fees and or other charges. |

### 4.1.10        Class 10 – Wells Fargo Bank, N.A. Secured Claim

| Class | Description | Impaired | Treatment |
|---|---|---|---|
| 10 | Secured Claim of: Wells Fargo Bank, N.A.<br><br>- Collateral description: 1-Crown Forklift C5150-50<br><br>- Collateral value: $3,500 (based on POC)<br><br>- Proof of Claim Amount: $13,907<br><br>- Portion of Claim secured: $3,500 per value of Collateral<br><br>- Scheduled amount: N/A<br><br>The Debtor and Wells Fargo entered into a purported lease agreement, entitled Single Sided Lease Agreement (the Lease Agreement"). The Lease Agreement terms include no option for the Debtor to terminate the lease and a nominal $1.00 purchase option. The Lease Agreement was governed by the laws of Illinois. | Yes; Holder of an Allowed Class 10 Claim is entitled to vote to accept or reject the Plan. | Payment interval: Monthly.<br><br>- M11-M22 at $ 297.62/mo.<br><br>Begin date:        M11<br>End date:          M22<br>Interest rate %:    3.7%<br>Total payout:      $3,571.44<br><br>When Plan payments to claimant are completed, claimant must promptly file a release of all Liens asserted against the Debtor and its property. The failure to do so promptly shall constitute a violation of the proposed Plan and the Confirmation Order.<br><br>If claimant seeks to add attorneys' fees, charges, penalties, or the like, other than principal and interest to its Claim, then claimant must file a motion for Court approval of such fees and/or charges no later than 60 days following entry of the Confirmation Order. Failure to file a motion shall constitute a waiver of all such fees and or other charges. |

### 4.2    Class 11 – General Unsecured Claims

Unless stated otherwise, payments to the holders of Allowed General Unsecured Claims will start on month 9 after the Effective Date.

#### 4.2.1 Class 11(a) – General Unsecured Claims

(a)    <u>Impairment</u>.   Class 11(a) is impaired under the Plan.   holders of Allowed Class 11(a) Claims are entitled to vote to accept or reject the Plan.

(b)    <u>Distributions</u>.   The Debtor will pay $2,573 monthly for 64 months, beginning month 9 through month 72. Payments will be made into a segregated bank account, which will be established by the Reorganized Debtor in accordance with section 5.6 of this Plan.   The total amount to be distributed to the holders of Allowed Class 11(a) Claims will be $164,699.00, which will be disbursed monthly from the Distribution Account on a Pro Rata basis.

#### 4.2.2    Class 11(b) – General Unsecured Claims of Critical Vendor

(a)    <u>Impairment</u>.   Class 11(b) is impaired under the Plan.   Holders of Class 11(b) Claims are entitled to vote to accept or reject the Plan.

(b)    <u>Distributions</u>.   The Reorganized Debtor shall pay holders of Allowed Class 11(b) Claims $2,195 monthly for 64 months beginning month 9 through 72.   The total amount paid will be $140,497.28.

### 4.3    Class 12 – Insider Unsecured Claims

(a)    <u>Impairment</u>.   Class 12 is impaired under the Plan.   holders of Allowed Class 12 Claims are entitled to vote to accept or reject the Plan.

(b)    <u>Distributions</u>.   The Debtor shall pay $7,232.81 in the 73rd month following the Effective Date.

### 4.4    Class 13 – Equity Interest Holder

Olson holds 100% of the stock in the Debtor.   Olson will retain his Equity Interests in the Debtor.   As such, the holder of Class 13 Equity Interests is not impaired and is not entitled to vote to accept or reject the Plan.

### 4.5    Satisfaction of Claims and Release

As of the Effective Date, all Claims against the Debtor shall be released except as provided in the Plan.

### 4.6    No Assumed Liability

Except as otherwise expressly set forth in the Plan, the Reorganized Debtor shall not assume or be liable for any Claims.

### 4.7    Disputed Claims

Notwithstanding any other provision of this Plan, no cash or property shall be distributed under the Plan on account of any Disputed Claim until the Claim is Allowed.   The Reorganized Debtor shall establish a reserve (the "Disputed Claims Reserve") with respect to Disputed Claims. Cash and property to be distributed on account of Disputed Claims shall be held by the Reorganized Debtor until such Claims are Allowed or disallowed by a Final Order.   At the option of the Reorganized Debtor, Cash which is held in the Disputed Claims Reserve may be held in the Debtor's current operating account, may be deposited into one or more segregated, interest bearing bank accounts that satisfy the requirements of 11 U.S.C. §345, or may be used to purchase a short-term certificate of deposit or other short term investment.   Upon the later of the Effective Date or thirty days after a Disputed Claim becomes Allowed, the holder shall receive a distribution from the Disputed Claims Reserve based on the Allowed amount of the Claim, so long as payments would have been made to the holder if the holder held an Allowed Claim as of the Effective Date.   Thereafter, the holder of the Claim shall participate in any further distributions under the Plan as the holder of an Allowed Claim.   Any cash or property remaining in the Disputed Claims Reserve after the resolution of all disputes by Final Order shall be distributed in accordance with the Plan.

### 4.8    All Defaults Cured and Waived; All Notes and Obligations Decelerated and Reinstated

Pursuant to sections 1123(a)(5)(G) and 1124(2) of the Bankruptcy Code, among others, and except as otherwise expressly provided by this Plan, all defaults that existed or may have existed under any promissory note, loan document, unexpired lease, executory contract, or other written agreement of or by the Debtor shall be deemed cured and waived as of the Effective Date.   All notes, instruments, or obligations that were accelerated prepetition and/or pre-confirmation shall be decelerated and reinstated as of the Effective Date.   All judicial and non-judicial foreclosure actions and proceedings that were instituted

pre-petition and/or pre-confirmation shall be canceled, terminated, and/or deemed withdrawn and rescinded as of the Effective Date.

## ARTICLE V

## MEANS FOR EXECUTION OF THE PLAN

### 5.1    Funding of the Plan.

The Plan will be funded by the Reorganized Debtor's ongoing business operations and Olson's new value contribution.

### 5.2    Revesting of Property.    Except as otherwise provided in this Plan, the Reorganized Debtor, as of the Effective Date, shall be vested with all of the assets, Claims, Causes of Action, and all other rights of the Estate.

### 5.3    Bankruptcy Case Administration.    Except as otherwise provided in this Plan, from and after the Effective Date and continuing through the date on which a final decree closing the Chapter 11 Cases is entered pursuant to §350 of the Bankruptcy Code and Bankruptcy Rule 3022, the Reorganized Debtor shall possess the rights of a party in interest pursuant to §1109(b) of the Bankruptcy Code for all matters arising in, arising under, or related to the Bankruptcy Case. In addition to the foregoing, for all matters arising under or related to the Bankruptcy Case, the Reorganized Debtor shall (i) have the right to appear and be heard on matters brought before the Bankruptcy Court or other courts of competent jurisdiction, (ii) be entitled to notice and opportunity for hearing, (iii) participate in all matters brought before the Bankruptcy Court, including but not limited to adversary proceedings, and (iv) receive notice of all applications, motions and other papers and pleadings before the Bankruptcy Court.

### 5.4    Continuation of Business Operations.    From and after the Effective Date of the Plan, the Reorganized Debtor is authorized to continue its normal business operations and enter into such transactions as it deems advisable, free of any restriction or limitation imposed under any provision of the Bankruptcy Code, except to the extent otherwise provided in the Plan.

### 5.5    Continuation of Anti-Discrimination Provisions of Bankruptcy Code.
A governmental unit may not deny, revoke, suspend, or refuse to renew a license, permit, charter, franchise, or other similar grant to, condition such a grant to, or discriminate with respect to such a grant against, the Debtor, the Reorganized Debtor, or another Person with whom the Debtor or the Reorganized Debtor have been or are associated or affiliated, solely because of the commencement, continuation, or termination of the Bankruptcy Case or because of any provision

of the Plan or the legal effect of the Plan, and the Confirmation Order will constitute an express injunction against any such discriminatory treatment by a governmental unit.

     5.6   **Establishment of Segregated Distribution Account.**  No later than ten (10) days after the Effective Date, the Reorganized Debtor shall establish an account at an FDIC or CUNA insured financial institution (the "Distribution Account") into which the Debtor shall, when required pursuant to the terms of the Plan, deposit the funds to be paid to the holders of Allowed Class 11(a) General Unsecured Claims. The Reorganized Debtor shall not deposit or commingle any funds into the Distribution Account excepting only amounts that the Reorganized Debtor is required to deposit pursuant to Section 4.2.1 of this Plan.

ARTICLE VI

IMPLEMENTATION OF THE PLAN

    6.1   <u>Method of Distributions Under the Plan.</u>

     (a)   <u>In General.</u>   Subject to Bankruptcy Rule 9010, all distributions under the Plan to be made by the Debtor to the holder of each Allowed Claim shall be mailed by first class mail, postage prepaid, to the address of such holder as listed on the Schedules as of the Distribution Record Date, unless the Debtor has been notified in writing of a change of address, including, without limitation, by the filing of a proof of claim or notice of transfer of claim filed by such holder that provides an address for such holder different from the address reflected on the Schedules.   The Debtor shall have no obligation to locate such holders whose distributions or notices are properly mailed but nevertheless returned. Distributions may be made under this Plan through payments directly from the Debtor, including payments from the Distribution Account.

     (b)   <u>Form of Distributions.</u>   Any payment of Cash made by the Debtor pursuant to the Plan shall be made by check; <u>provided, however,</u> that after the occurrence of the Effective Date, the Debtor is not obligated to make any Cash payment under the Plan unless the payment exceeds twenty-five dollars ($25); <u>provided, further,</u> that Cash equal to 100% of the distributions to which the holder of a Claim would be entitled under the Plan if the payment to such holder was less than or equal to twenty-five dollars ($25) shall be maintained in a reserve (the "Small Payment Reserve") for the benefit of such holder until an aggregate of at least ten dollars is payable to such holder and at such time the holder shall receive a payment equal to 100% of the distributions to which it would otherwise be entitled.

(c)     <u>Prepayment of Small Claims Authorized</u>.     Notwithstanding anything to the contrary herein, the Debtor is authorized to prepay any Allowed Claim where the total amount to be paid to the holder of the Allowed Claim will not exceed $100 over the Plan Period.

(d)     <u>Distributions to be on Business Days</u>.   Any payment or distribution required to be made under the Plan on a day other than a Business Day shall be made on the next succeeding Business Day.

(e)     <u>Distributions to be made on the Fifteenth Day of Applicable Month</u>.   Unless otherwise agreed to by the Reorganized Debtor and the holder(s) of all Allowed Claims within any particular Class of Claims, distributions shall be made on the fifteenth (15th) day of the month(s) in which such distributions are required to be made under this Plan.

(f)     <u>Distributions to Holders as of the Distribution Record Date</u>.   As of the close of business on the Distribution Record Date, the claims register shall be closed for the purpose of distributions under the Plan.   The Debtor shall have no obligation to recognize any transfer of any Claims occurring after the close of business on the Distribution Record Date.   The Debtor shall instead be entitled to recognize and deal for all purposes under the Plan with only those holders of record as of the close of business on the Distribution Record Date.

**6.2**   <u>Objections to Disputed Claims</u>.   Any objections to Claims against the Estate may be prosecuted by the Debtor or the Reorganized Debtor or any other party in interest.

**6.3**   <u>Estimation of Claims</u>.   The Debtor or the Reorganized Debtor may, at any time, request that the Bankruptcy Court estimate any Disputed Claim pursuant to §502(c) of the Bankruptcy Code, and the Bankruptcy Court shall have jurisdiction to estimate such Claim at any time, including, without limitation, during litigation concerning such Claim or an objection to such Claim.   The Debtor and the Reorganized Debtor shall be entitled to request that the Bankruptcy Court determine either the Allowed amount of such Claim or a maximum limitation on such Claim for all purposes (including, without limitation, distributions to be made) under the Plan.   If the Bankruptcy Court determines the maximum limitation of such Claim, such determination shall not preclude the Debtor or Reorganized Debtor from pursuing any additional proceedings to object to any ultimate payment of such Claim.   If the Bankruptcy Court determines the Allowed amount of such Claim, the amount so determined shall be deemed the amount of the Disputed Claim for all purposes under this Plan.   All such proceedings are cumulative and not exclusive remedies.

6.4    <u>Reversion of Unclaimed Checks</u>.    The amount of any check issued for distribution under the Plan that remains uncashed for a period of sixty days after the date of such distribution shall revert and be vested in the Estate free and clear of any Claim or Interest of any holder of a Claim under the Plan.

6.5    <u>Retention and Preservation of Claim Objections and Causes of Action</u>.    Upon entry of the Confirmation Order, the Reorganized Debtor shall have the right to object to all Claims and Interests asserted against the Estate and will retain all of the Debtor's or Estate's Causes of Action, including without limitation: (1) the Debtor's Causes of Action asserted in any adversary proceeding, state court proceeding, or any other proceeding which is pending as of the Confirmation Date, including, without limitation, the Causes of Action asserted against Pool Corp; (2) all Claims and Causes of Action disclosed in the Schedules which are incorporated here by reference; (3) all Claims and Causes of Action described in the Disclosure Statement; (4) any Claims and Causes of Action contained in any contested matter or objection to Claim pending on the Confirmation Date; and (5) any and all other Claims and Causes of Action that the Debtor holds prior to the Effective Date, including, but not limited to, Claims for unpaid accounts receivable.   All of aforementioned rights and powers shall vest in the Reorganized Debtor (<u>See</u> Section 5.2).   The Debtor expressly reserves its rights, Claims, and Causes of Action for surcharge under § 506(c) of the Bankruptcy Code and subordination under § 510 of the Bankruptcy Code

Unless a Claim or Cause of Action against any Person is expressly waived or released in the Plan or any Final Order of the Bankruptcy Court, the Debtor expressly reserves such Claim or Cause of Action for later adjudication (including without limitation, Claims and Causes of Action not specifically identified or which the Debtor may presently be unaware or which may arise or exist by reason of additional facts or circumstances unknown to the Debtor at this time or facts and circumstances which may change or be different from those which the Debtor now believes to exist) and, therefore, no preclusion doctrine, including without limitation, the doctrines of <u>res judicata</u>, collateral estoppel, issue preclusion, claims preclusion, waiver, estoppel (judicial, equitable, or otherwise) or laches shall apply to such Claims or Causes of Action upon or after the confirmation or consummation of the Plan based on the Disclosure Statement, the Plan, or the Confirmation Order, except where such Claims or Causes of Action have been expressly released in the Plan or any other Final Order of the Bankruptcy Court.

# ARTICLE VII

# VOTING ON THE PLAN

**7.1**   **Voting of Claims**.   Each holder of an Allowed Claim in an impaired Class which retains or receives property under the Plan shall be entitled to vote separately to accept or reject the Plan and indicate such vote on a duly executed and delivered ballot as provided in such order as is entered by the Bankruptcy Court establishing certain procedures with respect to the solicitation and tabulation of votes to accept or reject the Plan.

**7.2**   **Nonconsensual Confirmation**.   If any impaired Class entitled to vote shall not accept the Plan by the requisite statutory majorities provided in §1126(c) or §1126(d) of the Bankruptcy Code, as applicable, or if any impaired class is deemed to have rejected the Plan, the Debtor reserves the right (i) to confirm the Plan under §1129(b) of the Bankruptcy Code, and (ii) to amend the Plan in accordance with Section 11.7 hereof to the extent necessary to obtain entry of a Confirmation Order.

# ARTICLE VIII

# EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**8.1**   **Assumption of Executory Contracts and Unexpired Leases**.   The Debtor will assume the following unexpired lease(s) and/or executory contract(s) as obligations of the Reorganized Debtor under this Plan:

- Crown Credit Company [a lease for a 1-Crown WAV50-118, Serial No. 9a224277, as provided in Proof of Claim No. 18].
- Any lease or executory contract previously assumed pursuant to a Final Order of the Bankruptcy Court, including but not limited to the lease between the Debtor and its landlord for the Debtor's Ogden, Utah store, BDO 1075, L.C.
- Acuity Insurance policies (provides the general liability, property, workers compensation, and vehicle insurance for the Debtor).
- The Debtor has no other unexpired leases or executory contracts to be assumed.

On the Effective Date, the Debtor will reject the following executory contracts and unexpired leases:

- Any and all prepetition executory contracts and unexpired leases not expressly assumed above is rejected.

**8.3    Rejection Damages Claims.**    If the rejection of an executory contract or unexpired lease by the Debtor or the Reorganized Debtor results in a claim for damages to the other party of parties to such contract or lease, any claim for such damages, if not heretofore evidenced by a filed proof of claim, shall be forever barred and shall not be enforceable against the Estate, or its respective properties or agents, successors, or assigns, unless a proof of claim is filed with the Bankruptcy Court on or before forty-five (45) days following the later of (a) the Confirmation Date, or (b) the effective date of the rejection of such executory contract or unexpired lease.   Unless otherwise ordered by the Bankruptcy Court or provided in the Plan, all such Claims for which proofs of claim timely are filed will be treated as Class 11(a) General Unsecured Claims, subject to the provisions of this Plan.   The Debtor shall have the right to object to any such rejection damages claims filed in accordance with this Section.

**8.2    Post-Petition Agreements Unaffected by Plan.**   Except as otherwise expressly provided herein, nothing contained in the Plan shall alter, amend or supersede any agreements or contracts entered into by the Debtor after the Petition Date that were otherwise valid, effective and enforceable against the Debtor as of the Confirmation Date.   The Reorganized Debtor shall be deemed to be substituted for any Debtor in such contract or agreement, as applicable, and the Reorganized Debtor shall have all right, title and interest of the Debtor under such contract or agreement as if the Reorganized Debtor had been the original contracting party thereunder.

# ARTICLE IX

## CONDITIONS PRECEDENT TO EFFECTIVE DATE

**9.1    Conditions Precedent to Effectiveness.**   The Plan shall not become effective, and the Effective Date shall not occur, unless and until the following conditions are satisfied or waived:

(a)    the Confirmation Order, in form and substance reasonably acceptable to the Debtor, is entered by the Bankruptcy Court and has become a Final Order;

(b)    all actions, other documents and agreements necessary to implement the Plan are executed, delivered and, if necessary, properly recorded, and are effective; and

(c)     the Estate shall have sufficient Cash to meet all Cash funding obligations under the Plan required to be made on the Effective Date.

**9.2    Waiver of Conditions.**   The Debtor may waive one or more of the conditions precedent to the effectiveness of the Plan set forth in Section 9.1(a) or (b) above, except that the Debtor may not waive the condition set forth in Section 9.1(c) above.

## ARTICLE X

## RETENTION OF JURISDICTION

**10.1   Retention of Jurisdiction.**   After the Effective Date, the Bankruptcy Court shall have exclusive jurisdiction of the following specified matters arising out of, and related to, the Bankruptcy Case and the Plan pursuant to, and for the purposes of, §§105(a) and 1142 of the Bankruptcy Code:

(a)     to hear and determine any and all objections to the allowance of any Claims or any controversies as to the classification of any Claims or estimate any Disputed Claim;

(b)     to hear and determine any and all applications by Professionals for compensation and reimbursement of expenses;

(c)     to hear and determine any and all pending applications for the rejection or assumption of executory contracts and unexpired leases, and fix and allow (or disallow) any Claims resulting therefrom;

(d)     to enforce the provisions of the Plan subject to the terms thereof;

(e)     to correct any defect, cure any omission, or reconcile any inconsistency in the Plan or in the Confirmation Order as may be necessary to carry out the purpose and the intent of the Plan;

(f)     to determine any Claim or liability to a Governmental Unit which may be asserted as a result of the transactions contemplated herein;

(g)     to hear and determine matters concerning state, local, and federal taxes in accordance with §§346, 505 and 1146 of the Bankruptcy Code;

(h)     to enforce the releases, exculpatory provisions, and/or injunctions described or provided under this Plan including, without limitation, those described or summarized under Article 11, which enforcement jurisdiction

shall include entering temporary restraining orders, preliminary injunctions, permanent injunctions, contempt sanctions and other appropriate orders and remedies, including to stay and prevent litigation filed or pending before another court or tribunal; and

(i)       to determine such other matters as may be provided for in the Confirmation Order.

**10.2   Closure of the Case**.   As soon as the Debtor determines that there is no further need for administration of the Case by the Bankruptcy Court, and payments of all approved Administrative Expense Claims are completed, the Bankruptcy Case shall be closed pursuant to 11 U.S.C. § 350 upon (i) the filing of a final report, (ii) after twenty-eight (28) days' notice to parties-in-interest, and (iii) the entry of an appropriate final decree and/or order by the Bankruptcy Court closing the Bankruptcy Case. Absent an order extending the time for entry of a final decree entered after notice and an opportunity for hearing, a final decree closing the Bankruptcy Case shall be entered not later than 1 year after the Effective Date.   The Debtor will comply with Local Rule 3022-1 in seeking entry of a final decree. Subject to the Bankruptcy Court's discretion, the Bankruptcy Case may be closed notwithstanding (i) that adversary proceedings related to the Bankruptcy Case may be, and remain, pending, and/or (ii) that distributions remain to be made under the Plan.

# ARTICLE XI

# MISCELLANEOUS

**11.1   Continuation of Injunctions or Stays Until Effective Date**.   *All injunctions or stays provided for in the Bankruptcy Cases under §§105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Effective Date.*

**11.2   Release and Discharge of Debtor.**       *Except as contemplated by the Plan, the rights afforded to holders of Claims in the Plan shall be in exchange for a complete release, satisfaction, and discharge of all claims against the Debtor or the Reorganized Debtor, and acceptance of such distributions under the Plan shall be deemed irrevocably to release any and all Claims of any type, kind, or nature against the Debtor and its Estate. Persons deemed to have released Claims pursuant to this paragraph shall be forever precluded from asserting against the Debtor, the Reorganized Debtor, or their respective assets any Claim, including any Claim of the type released or deemed released herein.*

**11.3   Injunction Relating to the Plan.**   *As of the Effective Date, all Persons*

*are hereby permanently enjoined from commencing or continuing, in any manner or in any place, any action or other proceeding, whether directly, indirectly, derivatively or otherwise against the Debtor, its Estate, or the Reorganized Debtor on account of, or respecting any Claims, debts, rights, Causes of Action or liabilities discharged or treated pursuant to the Plan, except to the extent expressly permitted under the Plan.*

*Upon entry of the Confirmation Order, all holders of Claims and Equity Interests and all other parties in interest, along with their respective present, future, or former employees, agents, officers, directors, or principals shall be enjoined from taking any actions to interfere with the implementation or consummation of the Plan.*

*Further, except as otherwise expressly provided in the Plan or the Confirmation Order, all Persons who have held, hold, or may hold Claims against the Debtor, or who have held, hold, or may hold any debt, interest, or Cause of Action relating to the Debtor, are permanently enjoined, from and after the Effective Date, to the maximum extent permitted by law, from (i) commencing or continuing in any manner any action or other proceeding of any kind with respect to any such Claim, debt, interest, or Cause of Action against the Reorganized Debtor, or (ii) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against the immediate or any mediate transferee of any transferor's receipt of such property constituting a fraudulent conveyance, preference, violation of bulk sales or other law, or based upon any other claim that receipt and/or distribution of property by transfer pursuant to the Plan is wrongful, whether in law or equity.*

**11.4** **Post-Discharge Temporary Injunction for Equity Holders and Officers, Directors and Shareholders**.   *Unless the Debtor enters into a separate agreement with a particular creditor, the Confirmation Order shall act as a temporary injunction restraining any creditor, party-in-interest or any third party from pursuing any officer, director, shareholder or managing person of the Debtor on account of any Claims against such person which derive from or are related to Claims against the Debtor or the Estate (i.e. any claims against a person in his or her capacity as a guarantor or other co-debtor of the Debtor) for the duration of the payments to be made under the Plan.*

*Upon entry of the Confirmation Order, all creditors of Debtor shall be temporarily enjoined, pursuant to 11 U.S.C. §105, from proceeding against any officer, director, shareholder, employee, or other responsible person of Debtor, individually, or in their official capacities, for the collection of all or any portion of their Allowed Claims.   This temporary injunction will remain in effect during the*

*Plan term.   Should the Debtor be in violation of payment terms of the Plan and should that violation remains uncured for a period of 60 days after receipt by the Debtor of written notice from any party directly affected by such violation, the affected party may apply to the Bankruptcy Court for an order to dissolve the temporary injunction but only as to the affected party.   The Bankruptcy Court shall have exclusive jurisdiction to extinguish or modify the temporary injunction.*

*To the extent they may have any liability, officers, guarantors, and directors shall <u>not</u> be discharged or released from any liability for such Claims and debts under the Plan, however, absent further order of the Court, the exclusive remedy for payment of any Claim or debt so long as the Plan is not in default as described above shall be payment through the Plan.   The temporary injunction is not meant to discharge any third party's liabilities.*

*The injunction applies to the individual officer, director, shareholder, employee, or other responsible person of Debtor and also to their assets, both real property and personal property.*

*11 U.S.C. §105(a) permits the approval of the temporary injunction during the time Plan payments are being made especially where, as here, the injunction is an essential means to implement the Plan (See §1123(a)(5)), the injunction confers material benefits on the Debtor's estate, and the injunction is in the best interest of the vast majority of the creditors, the estate and the equity interest holders.*

*The injunction proposed in the Plan will be instrumental in promoting Plan feasibility. Among other reasons, if the injunction is granted, Olson will be able to direct his full attention to the Debtor's efforts to reorganize under the Plan. Additionally, the injunction will allow Olson to contribute "new value" monies and lessen his need for repayment of the Olson Loan from the Debtor.*

*The Confirmation Order shall constitute a finding the Court has jurisdiction to issue the injunction, that the injunction is consistent with the provisions of §§105, 524(e), 1123(a)(5) and 1129 and other applicable provisions of the Bankruptcy Code.   Issuing the injunction is in the best interests of the Debtor and the Estate.*

*Argument and factual support for the issuance of a temporary injunction shall be provided in the Debtor's Plan Confirmation Memorandum.   The discussion is provided here for disclosure.*

**11.5   <u>Bar Date for Administrative Claims</u>.**   All applications for allowance of Administrative Claims other than (a) fees and expenses of Professionals Allowed

pursuant to a Final Order of the Bankruptcy Court, and (b) fees and charges assessed against the Estate pursuant to 28 U.S.C. §1930, shall be filed not later than thirty days after the Effective Date.   All Administrative Claims not filed within thirty days after the Effective Date shall be barred.   The deadline in the preceding sentence shall be construed and have the same force and effect as a statute of limitations.   The Reorganized Debtor shall provide notice to all creditors listed on the mailing matrix of this bar date within ten days after the Effective Date.   The Bankruptcy Court shall determine all Administrative Claims.

11.6   <u>Other Default of Plan</u>.   In the event of any default of the provisions of this Plan, other than a default covered in the payment of amounts due to be paid on the Effective Date (which is covered by Section 11.4 of the Plan) a creditor or party in interest aggrieved by such default may provide written notice of default to the Reorganized Debtor.   The notice of default must describe with specificity the nature of the default alleged and the steps required to cure such default.   The Reorganized Debtor shall have thirty days after receipt of notice of default to cure such default.   If the Reorganized Debtor does not cure such default within thirty days after receipt of a notice of default, then a creditor or party in interest aggrieved by such default may apply to the Bankruptcy Court to compel compliance with the applicable provisions of the Plan.   The Bankruptcy Court, after notice and a hearing, shall determine whether a default occurred, and if a default occurred, whether such default has been cured.   Upon finding a material default, the Bankruptcy Court may issue such orders as may be appropriate, including an order compelling compliance with the pertinent provisions of the Plan.

11.7   <u>Setoffs</u>.   Except as otherwise provided in this Plan, nothing contained in this Plan shall constitute a waiver or release by the Estate of any rights of setoff the Estate may have against any Person.

11.8   <u>Amendment or Modification of the Plan</u>.   Alterations, amendments or modifications of the Plan may be proposed in writing by the Debtor at any time prior to the Confirmation Date, provided that the Plan, as altered, amended or modified, satisfies the conditions of §1122 and §1123 of the Bankruptcy Code, and the Debtor shall have complied with §1125 of the Bankruptcy Code.   The Plan may be altered, amended or modified at any time before or after the Confirmation Date and before substantial consummation, provided that the Plan, as altered, amended or modified, satisfies the requirements of §1122 and §1123 of the Bankruptcy Code and the Bankruptcy Court, after notice and a hearing, confirms the Plan, as altered, amended or modified, under §1129 of the Bankruptcy Code.   A holder of a Claim that has accepted the Plan shall be deemed to have accepted the Plan, as altered, amended or modified, if the

proposed alteration, amendment or modification does not materially and adversely change the treatment of the Claim of such holder.   The Debtor may, without notice to holders of Claims insofar as it does not materially and adversely affect the interests of any such holders, correct any defect or omission in this Plan and any exhibit hereto.

11.9   <u>Severability</u>.   If, prior to the Confirmation Date, any term or provision of the Plan is determined by the Bankruptcy Court to be invalid, void or unenforceable, the Bankruptcy Court may, upon the request of the Debtor, alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be applicable as altered or interpreted.   Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of the Plan shall remain in full force and effect and shall in no way be affected, impaired or invalidated by such holding, alternation or interpretation.   The Confirmation Order shall constitute a judicial determination that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable according to its terms.

11.10 <u>Revocation or Withdrawal of the Plan</u>.   The Debtor reserves the right to revoke or withdraw the Plan prior to the Confirmation Date.   If the Debtor revokes or withdraws the Plan prior to the Confirmation Date, then the Plan shall be deemed null and void.   In such event, nothing contained herein shall constitute or be deemed a waiver or release of any Claims by or against the Estate or any other Person or to prejudice in any manner the rights of the Debtor or any Person in any further proceedings involving the Estate.

11.11 <u>Binding Effect</u>.   The rights, duties and obligations of any Person named or referred to in this Plan shall be binding upon, and shall inure to the benefit of, the successors and assigns of such Person.

11.12 <u>Notices</u>.   All notices, requests and demands to or upon the Debtor shall only be effective if in writing and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and confirmed, addressed as follows:

If to the Debtor:

Sunplay Pools and Spas Superstore,
Inc.
c/o John Olson
1075 South Depot Drive, Suite 1
Ogden, Utah 84404

With a copy to:

Steven R. Fox
The Fox Law Corporation
17835 Ventura Blvd., Suite 306
Encino, CA 91316

    **11.13** <u>Governing Law</u>.   Except to the extent the Bankruptcy Code, Bankruptcy Rules or other federal law is applicable, the rights and obligations arising under this Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of Utah, without giving effect to the principles of conflicts of law of such jurisdiction.

    **11.14** <u>Post-Confirmation Fees, Final Decree</u>.   The Debtor shall be responsible for the payment of any post-confirmation fees due pursuant to 28 U.S.C. §1930 and the filing of post-confirmation reports, until a final decree is entered.

    **11.15** <u>Headings</u>.   Headings are used in the Plan for convenience and reference only.   It shall not constitute a part of the Plan for any other purpose.

    **11.16** <u>Filing of Additional Documents</u>.   On or before substantial consummation of the Plan, the Debtor shall file with the Bankruptcy Court any agreements or other documents that may be necessary or appropriate to effectuate and further evidence the terms and conditions hereof.

    **11.17** <u>Inconsistency</u>.   In the event of any inconsistency between the Plan and the Disclosure Statement, or any other instrument or document created or executed pursuant to the Plan, the terms of the Plan shall govern.

Dated:        April 26, 2019          Respectfully submitted,

                                      SUNPLAY POOLS AND SPAS
                                      SUPERSTORE, INC.

                                      By:
                                      John Olson
                                      Its President and Owner

                                      FOX LAW CORPORATION

                                      /s/ Steven R. Fox
                                      Steven R. Fox, counsel for Debtor


                                      COHNE KINGHORN, P.C.

                                      /s/ Jeffrey Trousdale
                                      Jeffrey Trousdale, local counsel for
                                      Debtor

{00430736.DOCX / 6}